RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0349P (6th Cir.)
File Name: 02a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GLENN ARTHUR ROBINSON,
        *Plaintiff-Appellee,*

        *v.*

UNIVERSITY OF AKRON
SCHOOL OF LAW,
        *Defendant-Appellant.*

No. 98-3315

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-02868—Solomon Oliver, Jr., District Judge.

Argued: August 1, 2002

Decided and Filed: October 7, 2002

Before: BOGGS, NORRIS, and SILER, Circuit Judges.

---

### COUNSEL

**ARGUED:** Tamara A. O'Brien, RODERICK, MYERS &
LINTON, Akron, Ohio, for Appellant. Loriann E. Fuhrer,
KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for
Appellee. **ON BRIEF:** Stephen J. Pruneski, Robert F.
Linton, Kimberly A. Kmentt, RODERICK, MYERS &
LINTON, Akron, Ohio, for Appellant. Stephen E.

1

Chappelear, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

SILER, Circuit Judge.   Defendant University of Akron School of Law ("the University") appeals the district court's denial of its motion to dismiss the claims of Plaintiff Glenn Arthur Robinson under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  This court stayed oral argument in this case pending the outcome of several Supreme Court and Sixth Circuit cases relevant to the issues.  These cases now have been decided, and based on these decisions we **REVERSE** the district court as to Robinson's ADA claim, and **AFFIRM** it as to his Rehabilitation Act claim.

**I.**

Robinson attended the University, a state school, from 1995 to 1996.  After completing his first law school exam, he complained to the University's dean about difficulty in reading.  A University doctor tested Robinson and concluded that he suffered from a learning disability which affected his reading speed, in addition to previously diagnosed Attention Deficit Disorder.  Robinson requested unlimited or 100% additional time to complete his exams.  A three-person committee considered his request and agreed to give him 25% additional time.  Robinson protested the decision, but the University refused to reconsider it.

Robinson ultimately withdrew from the University and filed this action for money damages in district court, alleging that the University failed to accommodate his disability in violation of ADA Title II and the Rehabilitation Act.  The University moved to dismiss Robinson's claims on the basis

viable ADA claim --that the University denied him access to public education on the basis of his learning disability – is essentially one that he was treated differently from other, non-disabled individuals, and sounds in equal protection, as *Carten* makes clear.  Although in *Carten* we noted that the plaintiff made no allegation of denial of process, whether based on his disability or otherwise, this should not be read to suggest that an alleged denial of due process not predicated on the plaintiff's disability may be joined to a standard, equal protection-style ADA claim to defeat sovereign immunity.  To allow such a claim would be inconsistent both with *Garrett* and with this court's holding in *Popovich*.   Because Robinson's ADA claim enforces only equal protection guarantees, *Popovich* does not save it, and sovereign immunity bars it.

We **REVERSE** the district court as to Robinson's ADA Title II claim, **AFFIRM** it as to his Rehabilitation Act claim, and **REMAND** this case for further proceedings consistent with this decision.

that the defendants denied him adequate process in dismissing him. Although he contends that the defendants improperly based their decision to dismiss him on his disability, he acknowledges that he was afforded a hearing on the dismissal on September 15, 1995, and makes no claim that he was entitled to additional procedure beyond that hearing.

*Id.* Each of the parties argues that *Carten* requires a finding in its favor. The University argues that here, as in *Carten*, Robinson alleges that he was excluded from participation in state-sponsored education on the basis of his disability and that, under the analysis of *Carten*, such a claim sounds in equal protection. Robinson responds that he, unlike the *Carten* plaintiff, alleges that the University denied him adequate process in refusing to accommodate his disability. In particular, Robinson alleges that he "was never given an opportunity to appear at any of the proceedings where Defendant University's employees chose the accommodation to be provided to Plaintiff for his disabilities." Relying on the above passage from *Carten*, Robinson argues that claims including such allegations sound in due process.

We disagree. The essential holding of *Popovich* is that a Title II claim sounds in due process and abrogates sovereign immunity where the plaintiff alleges that he was excluded from participating in a proceeding guaranteed to him by the Due Process Clause on the basis of his disability. *See Popovich*, 276 F.3d at 816 (holding that "*Garrett* ... does not foreclose a trial and verdict based on ... unreasonable exclusion from judicial proceedings based on disability in a due process-type claim"). Here, although Robinson complains that the University barred him from hearings on his case, he makes no claim that he was excluded from these hearings because of his disability. Such a claim is outside the scope of *Popovich* because it not an ADA claim -- there is no allegation of discrimination to support it – and must be brought, if at all, as a claim for violation of Robinson's due process rights pursuant to 42 U.S.C. § 1983. Robinson's only

of Eleventh Amendment immunity.[1] The district court denied the University's claim of immunity and the University then brought this appeal.

We stayed oral argument pending the outcome of two cases, *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), and *Nihiser v. Ohio Environmental Protection Agency*, 269 F.3d 626 (6th Cir. 2001), relevant to Robinson's claims. During the pendency of the stay, an *en banc* panel of this court decided *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002) (en banc), which also affects the resolution of those claims.

In *Nihiser*, this court held that Ohio has waived Eleventh Amendment immunity against Rehabilitation Act claims. *See* 269 F.3d at 628-29.

In *Garrett*, the Supreme Court held that states are immune to suits for money damages under Title I of the ADA.[2] The Court reasoned that ADA Title I, as enacted, exceeded Congress' constitutional authority to enforce the Equal Protection Clause of the Fourteenth Amendment, and as such was an invalid abrogation of states' Eleventh Amendment sovereign immunity. *See* 531 U.S. at 374. In order to be a valid exercise of this enforcement authority, legislation must respond to a documented "history and pattern of unconstitutional … discrimination by the States," and must on balance be congruent and proportional to the scope of the

---

[1] The Eleventh Amendment states that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

[2] ADA Title I prohibits employment discrimination on the basis of disability.

right it enforces. *Id.* at 365, 368. The Court explained that because disability is not a suspect class, the Equal Protection Clause allows states to make distinctions in employment on the basis of disability so long as they are rationally related to a legitimate state purpose. *See id.* at 365-68. As a corollary to this principle, "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Id.* at 367. Accordingly, the Court concluded that ADA Title I, which categorically requires such accommodations without regard to the existence of a rational basis for discrimination, was overbroad and disproportional to the scope of Equal Protection guarantees. *See id.* at 372-74.[3] However, it specifically declined to address ADA Title II, which prohibits states from discriminating against the disabled in the provision of public services, reasoning that Title II "has somewhat different remedial provisions." *Id.* at 360 n.1.[4]

In *Popovich*, this court applied the *Garrett* analysis to ADA Title II and concluded that it likewise exceeded Congress' powers to enforce the Equal Protection Clause. *See* 276 F.3d at 812, 816. However, the court held that ADA Title II may validly abrogate state sovereign immunity in certain cases where it is used to enforce Due Process rather than Equal Protection guarantees. *See id.* at 813, 815-16. In *Popovich*, the plaintiff claimed that the state's refusal to accommodate his hearing disability denied him the opportunity to participate meaningfully in a hearing to determine custody of his

---

[3] The court also held that ADA Title I failed the first part of its test in that it failed to adequately document a history and pattern of unconstitutional discrimination against the states. *See id.* at 370-72.

[4] ADA Title II states that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

children. The court found that in such a case, the constitutional right enforced by Title II was the plaintiff's due process right. *See id.* at 813. The court reasoned that the scope of due process protection is broad and goes beyond simply requiring a rational basis for government action. *See id.* at 814. Thus, the rights secured to the plaintiff by the statute in such a case did not exceed the scope of the constitutional right he sought to enforce, and his claim therefore validly abrogated state sovereign immunity. *See id.* at 815-16 (explaining that "[a]s applied to the case before us, the 'participation' requirement of Title II serves to protect [the plaintiff's] due process right to a meaningful hearing ... 'enforcing' the due process right rather than 'expanding' it").

The University concedes, in light of *Nihiser*, that the district court correctly denied its motion to dismiss as to Robinson's Rehabilitation Act claim. However, the parties dispute whether sovereign immunity bars Robinson's claim under ADA Title II.

## II.

The applicability of the Eleventh Amendment to claims against the states under the ADA is a question of law which this Court reviews *de novo*. *See Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997).

In *Carten v. Kent State University*, 282 F.3d 391 (6th Cir. 2002), this court held that sovereign immunity barred a graduate student's ADA Title II claim against the state university he attended. The student argued that the university had effectively excluded him from participating in public education by failing to make reasonable accommodations for his learning disability. *See id.* at 395. This court acknowledged the holding in *Popovich* and reasoned that:

Here, Carten makes no allegations that sound in due process. Carten complains that he was denied access to public education, not an opportunity to participate meaningfully in judicial proceedings. Nor does he claim